# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6717 | **DATE** | 4/26/2004 |
| **CASE TITLE** | Olvera vs. Blitt & Gaines | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and order, the Court denies defendant's motion to dismiss (14-1). The status hearing of 4/27/04 is vacated and reset to 5/7/04 at 10:30 a.m.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | 4-27-04 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 19 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 APR 26 PM 5:06 | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ENRIQUE S. OLVERA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 03 C 6717 |
| | ) |
| BLITT & GAINES, P.C., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Enrique Olvera has sued Blitt & Gaines, P.C., alleging that the law firm has violated the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692 *et seq.* Blitt & Gaines has moved to dismiss Olvera's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Although we agree with Blitt & Gaines' challenge to the legal theory on which Olvera's suit is based, we must deny its motion to dismiss, because Olvera could martial facts entitling him to relief under Blitt & Gaines' interpretation of the relevant law.

### Introduction

When considering a motion to dismiss for failure to state a claim, the Court must read the complaint liberally, granting the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *First Insurance Funding Corp. v. Federal Insurance Co.,* 284 F.3d 799, 804 (7th Cir. 2002). The Court will accept as true all well pleaded facts alleged in

1



the complaint and draws reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir.1999). However, the Court "need not accept as true 'conclusory statements of law or unsupported conclusions of fact.'" *First Insurance Funding Corp.*, 284 F.3d at 804 (citation omitted).

According to his complaint, Olvera received a credit card from Conseco during the time when it was licensed by the Illinois Department of Financial Institutions ("DFI").[1] Compl. ¶ 11. At some point, Conseco placed Olvera's debt in default, terminated his privileges to obtain credit, and charged off what he owed as bad debt. *Id.* ¶ 12. Cavalry SPV II, L.L.C., purchased Olvera's debt from Conseco, which has since filed for bankruptcy. *Id.* ¶¶ 11-12. Cavalry is not licensed by the DFI under either the Illinois Consumer Installment Loan Act or the Illinois Sales Finance Agency Act. *Id.* ¶ 9. Cavalry has continued to accrue interest on Olvera's account at a rate of 18.2 percent per year. *Id.* ¶ 18. Cavalry hired Blitt & Gaines, P.C., to collect Olvera's debt including the 18.2 percent interest. *Id.* ¶ 19. Blitt & Gaines attempted to collect the debt sometime in the year before Olvera filed the complaint on September 22, 2003. *Id.*

Olvera alleges that Blitt & Gaines has violated the FDCPA by falsely representing the legal status of his debt and trying to collect interest at a rate that violates the substantive law of Illinois. *See* 15 U.S.C. §§ 1692e, 1692f. Specifically, Olvera alleges that the Illinois Interest Act prohibits Cavalry from charging Olvera more than 9 percent interest on the debt, and any attempt by Blitt & Gaines to collect the debt on behalf of Cavalry at a higher rate of interest than Cavalry is allowed to receive under Illinois law violates the FDCPA. Blitt & Gaines argues that Olvera's

---

[1] Olvera has failed to state in his complaint whether Conseco extended credit to Olvera or made a loan to him. However, Olvera's response to the motion to dismiss indicates that Conseco issued Olvera a credit card. Pl. Resp. at 12.

claim must fail because the Illinois Interest Act does not apply to Blitt & Gaines. But this line of argument is immaterial. Olvera does not allege that Blitt & Gaines has violated the Interest Act; rather Olvera alleges that Cavalry has violated the Interest Act, rendering any attempt by Blitt & Gaines to collect the debt for Cavalry a violation of the FDCPA.

**Analysis**

We start our inquiry with the provisions of the FDCPA upon which Olvera bases his claim. Section 1692e makes it unlawful for a debt collector to make a false representation of "the character, amount, or legal status of any debt" or to use a "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2)(A) and (10). Section 1692f makes it unlawful to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Olvera's claim can succeed only if Cavalry is neither "expressly authorized by the agreement creating the debt" nor "permitted by [Illinois] law" to charge 18.2 percent interest.

Blitt & Gaines insists that the interest it seeks to collect from Olvera on behalf of Cavalry is "expressly authorized by the agreement creating the debt" as required by § 1692f, that is, expressly authorized by the credit agreement between Conseco and Olvera that was assigned to Cavalry. The firm further argues that because § 1692f permits Cavalry to charge the rate of interest specified in Olvera's loan origination agreement, any statements that Blitt & Gaines have made to Olvera regarding the 18.2 percent interest are not false representations prohibited under

3

§ 1692e.[2] The parties do not dispute that under the Illinois Interest Act, Conseco had a right to contract with Olvera to receive interest at a rate of 18.2 percent because it was a DFI licensee at the time it extended credit to Olvera. Pl. Resp. at 12. The Interest Act authorizes entities licensed by the DFI under the Consumer Installment Loan Act and the Consumer Finance Act "to receive or contract to receive and collect interest in any amount or at any rate agreed upon by the parties to the revolving credit arrangement." 815 ILCS 205/4.2. The question is whether Cavalry, the assignee of Olvera's debt, could charge a rate of interest legally contracted for by Olvera and Conseco.

Olvera insists that under the Illinois Interest Act the answer is no. The Act states that

> No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State.

815 ILCS 205/5. Olvera reads this as meaning that the Act limits what rate of interest can be received based on the recipient's status regardless of whether the recipient originated the loan or credit agreement. As discussed above, DFI licensees can charge any rate of interest on a credit card. The same provision permits "any other lender to receive or contract to receive and collect interest in an amount not in excess of 1.5 percent *per month*" in a revolving credit arrangement like the one involved in this case. 815 ILCS 205/4.2 (emphasis added). Olvera argues Cavalry is not a DFI licensee or "other lender" permitted by the Act to receive interest at a rate of 18 percent or higher.

---

[2] Blitt & Gaines assumes that the original agreement signed by Olvera and Conseco permits the creditor to charge interest on the debt at a rate of at least 18.2 percent – but, as we discuss below, neither party has presented the Court with any evidence of what the original agreement stated.

4

According to Olvera, Cavalry is either a creditor or an unlicensed party to a contract. Under the Act, a creditor may receive up to 5 percent interest per year, 815 ILCS 205/2, and "[i]n all written contracts it shall be lawful for the parties to stipulate or agree that 9% per annum, or any less sum of interest, shall be taken and paid upon every $100 of money loaned or in any manner due and owing from any person to any other person or corporation in this state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided." 815 ILCS 205/4(1). Olvera argues that under no circumstances can Cavalry receive more than 9 percent interest on any debt it owns. He argues that when Cavalry was assigned his debt by Conseco, Conseco's right as a DFI licensee to charge more than 9 percent interest was not transferred to Olvera – even if the original credit agreement specifically provided for an interest rate of more than 9 percent – because Conseco's DFI license was not transferable. In support of this proposition, Olvera offers an analogy: Driver A, who does not have a driver's license, cannot legally drive the car he purchased from Driver B just because Driver B had a driver's license. It is true that Conseco could not transfer its DFI license to Cavalry. 205 ILCS 670/5. But the issue is not whether Conseco could transfer its license to Cavalry; it's whether Conseco could assign all its rights under the contract, such as the rate of interest on the debt, to Cavalry.

Olvera essentially is asking this Court to hold that an assignee of a debt is prohibited by law from charging the rate of interest specified in the original credit agreement if the assignee could not have contracted to receive that rate of interest under the Interest Act if it had been an original party to the agreement. Olvera looks for support in a Third Circuit case stating that "regardless of the presence of any agreement authorizing the rates of interest and penalties" charged by the assignee, the assignee would be in violation of § 1692f(1) if that "authorized" rate

5

exceeded the statutory 10 percent cap. *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 408 (3d Cir. 2000). However, *Pollice* actually rebuts rather than supports Olvera's theory. In *Pollice* the Court held that

> government entities had the power to assign their rights relating to the tax, water and sewer claims and liens to [the defendant], and that [the defendant] as assignee thereby stands in the shoes of the government entities with respect to these claims and liens. Therefore, [the defendant] is entitled to collect interest and penalties on the assigned claims to the same extent as the government entities are entitled to under relevant state and local law.

*Id.* at 389-90. The Court found that the municipalities could not have charged more than 10 percent interest and, therefore, the assignee could not exceed that cap. *Pollice* supports Blitt & Gaines' contention that as an assignee, Cavalry is permitted by law to charge whatever rate of interest Olvera agreed to pay the assignor.

The Court has found only one case that lends any support to Olvera's argument. In a 1939 decision, an Illinois appellate court made a statement that can be read to suggest that an assignee could not charge the rate of interest that a licensed entity could charge if the assignee was not licensed. *Kraus Bond & Mortgage Organization, Inc. v. Vicari*, 20 N.E.2d 865, 868 (Ill. App. 1939) ("At the time the loan was made, the lender, Marek Kraus, was licensed and during the time the payments on the loan were made, plaintiff was licensed. Hence, plaintiff and his predecessor had a right to demand and receive the 3.5% interest contracted for."). This comment, which as best as we can tell has not been elaborated upon or developed since 1939, cannot support the weight it would have to bear to support Olvera's claim. As we discuss below, the court's comment contradicts more than a hundred years of Illinois precedent.

It long has been held that "[t]he assignee stands in the shoes of the assignor." *Wetherell*

*v. Thirty-First Sreet Building & Loan Association*, 153 Ill. 361, 365, 39 N.E. 143, 143 (1894). *See also Plumb v. Fluid Pump Service, Inc.*, 124 F.3d 849, 864 (7th Cir. 1997) ("[E]lementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor." (internal citation omitted)); *Olson v. Etheridge*, 177 Ill. 2d 396, 406-07, 686 N.E. 2d 563, 567 (1997) (same). The Illinois Interest Act regulates the origination of loans and credit agreements by lenders and creditors. It does not deal with the interest an assignee who was not an original party to the credit agreement can charge on a matured debt. The Interest Act does not specifically state that an assignee is limited to charging interest on a matured debt at the rate it would be permitted to charge if it had originated the credit agreement. The Court believes it would be imprudent to adopt a reading of the statute that abandons one of the most basic tenets of the common law when the Act does not expressly call for that result.

The Seventh Circuit has stated that "if the clear language, when read in the context of the statute as a whole or of the commercial or other real-world (as opposed to law-world or word-world) activity that the statute is regulating, points to an unreasonable result, courts do not consider themselves bound by 'plain meaning,' but have recourse to other interpretive tools in an effort to make sense of the statute." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 537-38 (7th Cir. 2003) (internal quotation marks and citation omitted). Reading the Interest Act as limiting what an assignee can receive based on the interest he could have contracted for if he had originated the loan or credit agreement would lead to an absurd result. Specifically, a debtor who defaults on his debt to a licensed entity would receive a windfall if his debt was assigned to an unlicensed entity, because the interest rate he could be charged then would be limited to 5 or 9

7

percent – even if he had agreed to a higher rate of interest in the original credit agreement. The Court cannot find any legitimate public policy reason for giving the debtor such a windfall. The Act does not entitle the debtor to obtain a better interest rate when his debt is assigned to a third party than he contracted for at the regulated moment when the credit was extended or loan originated. Thus it is lawful for an assignee to charge the rate of interest contracted for in compliance with the Interest Act by the debtor and assignor, even if the assignee could not have charged the rate of interest if he had been an original party to the agreement.

Conseco was a licensed lender and, accordingly, it could contract for any interest rate. When Cavalry bought Olvera's debt from Conseco, it was entitled to charge the same rate of interest specified in the credit agreement between Conseco and Olvera. But neither party has provided evidence of the interest rate Olvera agreed to pay Conseco. If Olvera agreed to pay Conseco 18.2 percent or higher, Olvera's suit must fail because Blitt & Gaines is attempting to collect interest at a rate "expressly authorized by the agreement" and "permitted by [Illinois] law." However, if Olvera agreed to pay Conseco less than 18.2 percent, Cavalry does not have the right to charge Olvera 18.2 percent interest, and Blitt & Gaines cannot attempt to collect that interest or state that the debt is subject to an 18.2 percent rate of interest. Thus the outcome of this case rests on an issue of fact that cannot be determined on a motion to dismiss. Accordingly, dismissal is inappropriate at this time.

## Conclusion

For the reasons stated above, the Court denies Defendant's motion to dismiss [docket # 14]. The status hearing set for April 27, 2004 is vacated and reset to May 7, 2004 at 10:30 a.m.

/s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date: April 26, 2004